The next case for argument is Deere v. AGCO, 23-1811. Mr. O'Quinn, whenever you're ready. Thank you, Judge Prost, and may it please the Court, John O'Quinn on behalf of Deere. There's no dispute in this case about how the accused products operate. The evidence all shows, and indeed defendants' own documents and videos, confirm that speed tubes loading wheels engage the seeds and then propel them forward like a baseball pitching machine, all within a confined space. So to avoid infringement, defendants argued at claim construction that any gravity drop, free flight movement of the seeds in the system had been disclaimed and asked for an instruction to that effect. They lost that issue, and the no-disclaimer language, the mirror image of the disclaimer language that defendants had sought at Appendix 2010, was included to foreclose that as a basis for arguing non-infringement. What happened at trial was that defendants fought claim construction, relitigating claim scope by arguing that capture required the seed to be controlled at all times without any free flight or free fall, with the District Court ultimately acquiescing in removing the language that had made clear that such actions were not outside the scope of the claims. So where I'd like to start is with the legal error in the construction that went to the jury, because despite its claim construction order and other pretrial rulings, when it came time to instruct the jury, the District Court affirmatively withheld guidance about claim scope necessary for assessing infringement, namely that the asserted claims encompass systems that include free fall or free flight to the belt, precisely because they are not disclaimed. And that lack of guidance then permitted the jury to decide non-infringement based on defendants' repeated arguments that the accused speed tube system did not remove seed by capturing it because the seed was, quote, in free fall to the flighted belt, quote, flying through the air with no component touching it, as their counsel argued both in opening and closing before the jury and their expert and their product designer asserted as well. Yet at the same time, the District Court made it clear it would inform the jury that the claims encompassed a free fall if the jurors asked the question, asked a question to that effect on their own, because that would then raise a claim construction issue. Mr. O'Quinn, where below did the opposing counsel say to the jury, all you need to understand to decide the infringement question here is that there is a period of time where the seeds are in free fall in the accused product. And because of that free fall period, we have no infringement. Yeah, so Judge Chen, I think that there are four places in particular that I would point you to. First is in the opening statement at 40,191, where it talks about the seed flying through the air, and then 40,194, that it's free fall to the belt. You then have, you know, in closing, counsel arguing, you know, quote, and far from being captured, the seed's actually in flight, flying through the air, uncontacted by any component. That's Appendix 41,225. And you had the same point coming out in testimony from their witnesses, that the system does not, quote, control all aspects of the seed motion from the seed meter to the belt. That's Appendix 40,874. And their expert said something almost identical to that at Appendix 41,001. And the point is that their arguments to the jury were that it didn't have to be, that it had to be controlled at all times. And that is diametrically inconsistent with the finding of no disclaimer, that there were portions where you could have free fall. Where, if ever, did you all, in light of all of this going on at trial, ask the judge for a clarifying construction of something of that sort? So, Judge Prost, this issue... You need to clarify the construction? Yeah. So, Judge Prost, our position was that the construction order, you know, reflected in the claim construction order and in the pretrial order, Appendix 39,89, had the clarification of saying that there was no disclaimer of such free flight or free fall. And this issue then got re-litigated in front of the district court judge at Appendix 40,029, Appendix 40,391, Appendix 40,409, with the district court then ultimately ruling at Appendix 41,030, that, quote, on cross-examination and going forward, I'm not going to allow Deere to put in front of the jury again that I have construed the claim to say no disclaimer, end quote. And this was contested in the jury instructions, as you can see, at Appendix 4,251. And when it came time to finalize those jury instructions, the parties identified that there was a dispute about this. And the judge said, quote, I've already ruled on that, that's Appendix 41,140, and then excluded the no disclaimer language from the jury. So, our point is, this is essentially, it's almost the inverse of O2 micro. There was a clear language or clarifying language in the construction, and the district court ultimately then withheld that clarifying language and did so on a misunderstanding. I mean, as this court made clear in O2 micro, in that case, quote, the district court failed to resolve the party's dispute because the parties disputed not the meaning of the words themselves, but the scope that should be encompassed by this language, end quote. And if you look at, for example, Appendix 40,410, the district court didn't seem to appreciate that just because it wasn't a synonym, that he wasn't substituting this word for that word, that it was an issue of claim scope to not explain to the jury that this sort of conduct, the free fall, free flight was not outside the scope of the claims, and therefore not a permissible basis for non-infringement. And I think that leaves you then in a situation like- Did your side include that in your closing argument, that discussion, that argument to the jury? So we did say, the district court said that we could tell that whether we could argue to the jury, you know, where in the claims does it say that there can't be any of that? And we did say that, but that is not the same as actually providing, you know, in this court's words, the yardstick to the jury for the jury to then measure infringement. I mean, as this court made clear in Omega Patents, quote, in the absence of guidance in the form of proper claim construction, the jury lacked a yardstick by which to measure the arguments and the evidence on this issue. And that's exactly what happened here, is it's not enough to say, well, you can argue this, and they can argue that. The jury actually needs to be instructed on the proper scope of the claims so that they can decide, just as in Omega Patents, they can then assess whether an infringement or a non-infringement theory was a valid one. And that's what the jury was not able to do here. And that itself, therefore, requires a new trial based on the failure to include this clarification for the jury that we had originally asked for, that was originally in the claim construction. The district court subsequently withheld. I'm happy to answer other questions about this, but another issue I'd also like to address, which is... And can I just ask you one more thing about the claim construction issue? So the no disclaimer language that is at issue says there was no disclaimer of a category of free fall between the seed meter and discharge. That doesn't eliminate the issue of whether a system that includes such free fall would meet the claim construction requirement of capture. So I'm having a little trouble understanding what it was that the judge, the district court, in your view, had to tell the jury. I don't think there's any... All that the no disclaimer language says is that there is no categorical disclaimer of free fall. But the argument that the other side was making, at least as I was hearing it in your description of the five citations, was that, look, there's free fall. That helps us convince you that there was no capture. Yeah. So Judge Toronto, so the specific language that's at issue was at Appendix 125, and it was that, quote, no disclaimer of a seed delivery system that allows for seeds to drop by gravity between the seed meter and discharge. That was the language. Right. I'm just trying to point out what it feels to me like a distinction between there was no categorical disclaimer that would prevent a capture conclusion whenever there was any free fall from a case-specific determination that free fall may or may not negate a capture conclusion. I agree with you that it's not categorical in that sense, but what this then allowed someone to do, and I'll point you to Appendix 41001. This is their expert. Their expert gets up in front of the jury and says, in order to be captured, in order to be Now, that's inconsistent with the no disclaimer language, because if there's any gravity free fall within the system, then it's not controlling all aspects of the motion of the seed. And so we then wanted to and would have cross-examined their expert to say, like, your suggestion that the system has to be controlling of all experts of the motion of the claims allow for some free fall, that that is not disclaimed from the scope of the claim. I'm sorry, and you just don't think that there's any logical distance between saying the claim allows for free fall and there's no disclaimer of free fall? It feels to me like there is. I think the concern, Judge Toronto, is could the jury then rule, simply based on the idea that there was some free fall, that that was inconsistent with the definition of capture, and therefore it didn't fall within the scope of the claims? And I think the no disclaimer language categorically rules that out and rules out the jury being able to rule on the basis that it wasn't, quote, controlling all aspects of the motion of the seed. Again, the very thing that we weren't then able to cross-examine on, because that is when the district intervened. Mr. O'Quinn, why wasn't that discussion by AGCO's expert just talking about the definition of capture in the abstract? Why do we necessarily have to think he was espousing a theory about the free fall portion? I mean, it could just be removing the seed by capture. I mean, what that action has to look like, and not necessarily so much about what's happening during the free fall period. Yeah. Two points, Judge Toronto. One sort of factual and then one legal. The factual one is this is right after their expert had said in Appendix 40,998 that it's, quote, actually just floating free, end quote. So the expert is linking those two things up. And where that leaves you is the fact is we're wondering- He seems to be talking about it right after talking about whether the belt captures the seed. Well, I think he ends up talking about both, because their position was that the belt, it wasn't sufficient for the belt to be capturing. The capture had to happen earlier in the system. And that there was an inconsistency between capture and free flight. But the fact that we are sort of speculating about what it is that the jury could have relied on. I the jury could have relied on the idea that there was some free fall within the system, which they argued repeatedly to the jury. And as this court held in Network 1 versus HP, when there's not a basis, when the verdict form doesn't indicate a basis for the jury's decision, and the defendant relied on the district court's erroneous construction, and in this case, the absence of the construction for an argument that it doesn't infringe, then there's prejudice. A different way, again, as Omega Patton pointed, was where non-infringement theory could be based in a way that's inconsistent with the proper construction. The verdict has to be set aside. And respectfully, I'd submit that that's where we are now. I realize I'm well into my rebuttal time, but one last point before I turn it over, and that is that the district court separately aired a new trial should be granted because of the exclusion of the testimony about the 037 patent and cross-examination on that. And it went both to the substance of how the accused system works and to the credibility of the other side in their arguments that, from an engineering perspective, projecting and accelerating was the opposite of capture. And the district court's basis for excluding this was the idea that there was going to be some sort of mini-trial. And I would point you to about the 037 patent, and I'd point you to Appendix 3750, the interrogatory response, because it says in no uncertain terms that the person we were about to cross-examine, Mr. Radke, had led the development of the feeder wheels, came up with the idea for the feeder wheels, that the dual feeder wheel feature was then included in the speed tube product that was tested and then launched, and the precision planning obtained patents allowing the novel, excuse me, showing the novel idea for the feeder wheels. That is a clear admission that the accused system includes the feeder wheels of the 037 patent. Their arguments to the contrary are not qualified in the way that they now argue on appeal. And as this court said in Leader v. Facebook, that means that they should be bound by that. And that shows that, yes, the district court did abuse its discretion. I'm happy to answer any questions about that or anything else and see that my time has expired. There are no further questions. Let's hear from the other side and we'll restore some rebuttal time. Thank you. Thank you, Judge Pruess. Thank you, Your Honors. May it please the court, Michael Summerskill on behalf of the appellees. At trial, the overwhelming evidence supported the verdict of non-infringement, and Deere's arguments to now try to overturn that verdict are divorced from the record and in many instances waived. And on the divorce from the record point, I want to give an example of what Mr. Quinn was just talking about. We never argued at trial that the patent disclaimed a system that had a gravity drop. And the clearest indication that we didn't argue that is in Deere's lead trial counsel's closing. This is at appendix 41204 of the trial transcript, page 1204, 12 to 15. And he said, the court has made clear that the claim permits does not exclude gravity drop, and you will not hear the defendant's counsel say that it does not include gravity drop. I'm sorry, what was the page site you gave on that, please? This is appendix 41204. 204, thank you. And it's the trial transcript at page 1204, lines 12 to 15. So even their lead trial counsel in his closing said, we never argued to the jury a disclaimer, and that's because we didn't. Instead, we argued that the speed tube didn't remove by capture by pointing to the fact that, you know, the two paddles on the feeder wheels sequentially hit the seed, contacted the seed, accelerated it by 800% from one to nine miles an hour. And then instead of it being captured, it was flying through the air down to the flighted belt. And I think, Judge Toronto, to one of your questions, the reason we focused on the fact that it was flying through the air after it had been impacted, because that was relevant to the nature of the contact of the feeder wheels. In other words, one hits it to dislodge it, another hits it, and it projects it and accelerates it. So I think, you know, and I was the lead counsel for precision at trial. I know Mr. Quinn was not there, but what I can tell you, we never argued a disclaimer to the jury. So let me step back and address the, I'll address the two issues Mr. O'Quinn had, the disclaimer issue and the other seven. Stepping back on the disclaimer issue, Deere's argument that the district court changed its construction over the course of the trial is just not accurate. First piece is Deere waived this argument. After the district court stated that no disclaimer language, that the no disclaimer language was not part of the construction, and that he would not let them put that in front of the jury again, Deere responded, we're fine with that. And that's at appendix 41030 to 4103. So they acquiesced to the ruling at the time. But they're also substantively wrong on this issue. The district court didn't change its construction at any point. The no disclaimer language was never part of it. Can I just ask, I must say just personally, the argument about changing the construction, there's a lot of interpretive stuff in there that I don't find very helpful. What I'm focusing on is what I took to be the real essence of Mr. O'Quinn's argument, that given the presentations your side made, your expert, you or your co-counsel, that it was important for the jury to be told that the presence of free falling in this system at a particular location really doesn't even tend to negate a finding of capture. And it was, given your presentations, lawyer and witness, it was important that the claim construction, understanding that the judge with unique authority, different from counsel on the other side, had to inform the jury about. Well, I think, Your Honor, there's a difference between arguing a disclaimer to the jury, which saying the claims cannot cover any system in which there's a there is some gravity drop. We argued the latter, not the former. And I do think there's a delta between those two positions. Our argument was the system didn't remove by capture because the paddle wheels hit the seed, they accelerated the seed, and then it was traveling through the air for some period of time. So our argument was we don't remove by capture. Did you have testimony about whether when the two paddle wheels come together, there is a very brief moment, and again, here I'm thinking of the baseball pitching machine, when that seed is not free to go anywhere it wants. For a brief moment, it's being held by one thing on one side and another thing on the other side. We did not, Your Honor. And in fact, the testimony is to the contrary. The testimony from our expert and their expert admitted this on cross. The paddles on the two feeder wheels hit the seeds sequentially. First one, which dislodged the seed, and then the second one. And is there a very brief period of time when they're both contacting the seed? Yes, but it's never holding the seed. And I think, you know, the analogy of the baseball pitching machine was one we took from their expert, and we used that a demonstration at trial, and the jury agreed that that didn't capture the seed. But I think the better analogy is another analogy from their expert, where he said that even if you're pushing a child on a swing with two hands, that's not capture, that's projecting. And so I think that's the key point on the capture issue. Basically, what Deere's argument is, is that virtually any contact would be capture. And that's, you know, the jury disagreed with that. But again, those feeder wheels, the paddles of the feeder wheels hit the seed sequentially. They're not holding it, they're projecting it, and they're accelerating it. And that was by design. What Precision realized is that they needed to get the seed safely from the slow-moving seed meter to the very fast-moving flighted belt. So they realized they had to accelerate it. And the analogy our inventor on the stand gave was, imagine an on-ramp on a highway. If you get on the highway in front of a Mack truck going zero miles an hour, it's going to be a bad outcome. So they needed to accelerate the seed. There was no capture. They were trying to accelerate the seed. In contrast, in the patent, the whole point of their loading mechanism was to slow the seed down and insert it into their belt. And Your Honor, on the point of what Mr. Quinn's arguments, Deere was expressly permitted to argue that the claims did not exclude a system in which there was a gravity drop. And Deere pointed to Precision marketing documents that said there was no freefall in the Precision system. So in response to that, the judge was correct in allowing us to point out the operation of the speed tube system, including that the seed did fly through the air after the contact, or just as a child who's pushed with two hands on a swing flies through the air relevant to the contact. The child's not captured. The child is accelerated. And again, I'll come back to their argument on appeal. Mr. Quinn's was that we argued disclaimer to the jury, and that was improper, but their own lead counsel trial said, you will not hear defendants counsel say that it does not include a gravity drop. So their own lead counsel acknowledged we didn't argue disclaimer. And in fact, we didn't. Your Honors, unless you have questions about either the capture claim construction issue, I'll turn back to the 037. Mr. Quinn's argument on the 037. So Deere's argument is that the district court erred by not allowing Deere to cross-examine with the 037 patent, which was a separate Precision patent. And we submit the district court's decision was correct because the 037 patent describes a system that is different from the speed tube product. This is on our brief at page 30. We've got a picture of both systems. The 037 patent describes a system that uses feeder wheels that have a solid outside outer casing. In contrast, it's undisputed that the speed tube doesn't use feeder wheels with a solid outside casing. It instead uses feeder wheels with paddles that, as I've said, sequentially hit the seeds. So it's a different system. And the district court was correct under Rule 403, finding that it would be prejudicial to allow Deere to argue that the speed tube product infringed by pointing to a Precision patent that describes a different system. And that's even though your interrogatory response says in awfully plain terms that the 037 covers your product. Well, Your Honor. And I just want to add just because it's in my mind before I forget it. When the trial court said, I'm going to exclude the testimony, it referred to one sentence in that interrogatory response, but did not refer to the sentence that said the 037 covers the speed product. Well, there was motion to eliminate practice on this issue. And Deere's counsel read all of the language from the interrogatory at some point. I don't remember if it was at this particular sidebar where it was not, but the district court. Right, right. But when the judge said, I'm not going to exclude it, he says the sentence in question cited by Deere says, quote, Precision planting, obtained patents showing the novel idea for the feeder wheels, unquote. I would actually not think that that was the most important sentence, that the sentence that immediately preceded is the one that says this invention was put into the speed product. Well, what we intended in that interrogatory and what the district court we submit correctly found is that the interrogatory response was stating that the 037 patent describes the general concept of feeder wheels, not the specific feeder wheels used in the actual speed tube product. And there doesn't have to be a debate about this because you can see it again. And this is our brief on page 30. And this shows the 037 patent figure 12A next to the speed tube. And in figure 12A, you can see the wheels used there have a solid outside casing. So they're spinning like this, whereas in the speed tube, they're feeder wheels with paddles. And so what the interrogatory response was saying is that the 037 patent describes the general concept of feeder wheels, but not the specific feeder wheels used in the speed tube product. And again, you can see- So were the claims of the 037 limited to the speeder wheel with essentially a rim around it? You know, your honor, there was never any evidence in the trial comparing the claims of the 037 to the speed tube product. We never argued that the claims of the 037 patent covered the speed tube product. Deere never argued that the claims of the 037 covered speed tube product. So it was just not something that was ever at issue in the trial. The passage in the 037 column 12, line 40 to 41 says, at step 1525, the seed is preferably captured between the loading wheels 1202, 1204. And this is talking about figure 15, which is a, I don't know, flow chart or something, which starts with capture seed with seed meter. That's not limited to any particular wheels, ones with rims or without rims. How do we build into that column 12 sentence, the rim nature of the wheels? Because all of the wheels that are described in the 037 are wheels that have this outside, this solid outside. That's the 1202, 1204 reference? Yeah. And so Your Honor, again, yes, the 037 patent talks about capturing and then ejecting, but it's not describing the specific system used in the speed tube. So it's really irrelevant to the operation of the speed tube. The 037 patent claims, they seem to separate out the act of releasing the seed and capturing the seed between the two loading wheels. Is that correct? That the first act is to remove the seed from the seed meter and then a separate act is to then capture said seed between the two wheels? I think in the 037, what it does is the wheels pull the seed off the seed meter. And so that's what Deere would say is capturing what the 037 says is capture. And then they project it. Okay. So it is the wheels then themselves that are releasing the seed. I'm looking at the claims of the 037. And it tracks the chart of the block diagram of figure 15, where step 1520, you release the seed, step 1525, you then capture the seed between the loading wheels. And then when you look at the final claims, like claim 17, and claim 20, it's really driving in the thought that there's two separate steps, releasing the seed and then where the seed release location is located above and adjacent to the seed capture location. Your Honor, I think that is right for the 037. And so what I'm wondering is, it doesn't seem to be describing removing the seed by capturing the seed. It seems to be removing the seed and then separately capturing the seed. Right. And as Your Honor is referring to, the two precision patents, I'm sorry, the two Deere patents that issue, the claims require remove by capture. And all the evidence presented trial was that the actual speed two product doesn't do that again, because of the nature of the contact of the paddle wheels, which hit the seed sequentially to project and accelerate it. I'm sorry, Judge Prost, I didn't hear you. If there are no further questions, your time is up. Thank you. Thank you. We'll restore three minutes to Mr. O'Quinn for rebuttal. Thank you, Judge Prost. So I want to start with the 037 patent. First of all, this contrast he's trying to draw between that patent and the accused system of the wheels being solid. If you look at nine lines, 27 to 30 of the 037 patent makes clear that the material is more compressible than solid material. And it has, it consists of these veins, which are like, which are like blades. But, you know, you don't have to take my word for it. You can take their word for it because they gave an interrogatory response, which under this court's decision and leader technologies versus Facebook, they can't run away from. That thorough response at appendix 3750 specifically identifies points to a picture of the feeder wheels in the accused device. And those are the same feeder wheels that it is then referring to when it cites the 037 patent. And as you pointed out, Judge Toronto, you know, the district court addressed this very quickly. It's at appendix 40,902. And look just at the last sentence, as opposed to looking at everything leading up to it, that explains that we're talking about the same feeder wheels. There was no separate motion and limine practice, even though this was on the exhibit list, that where this was addressed was appendix 40,902. And the district court, A, didn't do the kind of balancing that the Third Circuit required, it requires in Glass versus Philadelphia. And second, you know, this mini rationale just kind of breaks down in light of the interrogatory. And if you want to understand, you know, to your question, Judge Chin, about what's happening in claim 20 of the 037 patent, I would submit, look at appendix 50,120, the video. You can see what's happening is that it's being captured and ejected. As it comes off the meter, it's being captured between the wheels, and it's being ejected. And it doesn't matter if the fins or the paddles are hitting at the same time, there's a moment where it is stuck between the two wheels and then ejected out of it. And yes, it's very fast, but this court's, you know, the system is very fast. And this court's decision, decisions make clear that, you know, brief infringement is still infringement. The exclusion of the 037 patent was highly prejudicial, and it was an abuse of discretion and as a basis for a new trial, as is the exclusion of the no disclaimer language. And at the end of the day, whether it was originally in the construction, not in the construction, this was a dispute about claim scope. And it was a dispute about claim scope that was crystallized during the trial. And there was no waiver of this issue. The district court recognized at the time of jury instructions that it was a disputed issue, 41,140. The we're fine with that referred to how we were going to handle the fact that we had previously told the jury that it was in the claim construction, and now we weren't going to be able to tell that. So there is no waiver here. This is a situation where the necessary information to understand the scope of the claims was withheld from the jury. The arguments that were presented, yes, they didn't use the word disclaimer, but they used free fall at appendix 40,194 and 40,548, all of which are synonyms for gravity drop. And this is a basis on which the jury could have found non-infringement. And under this court's precedence, that requires a new trial with a proper claim construction. And I'm happy to answer any additional questions the court may have, but I recognize my time is otherwise expired. Seeing no further questions, we thank both counsel. The case is submitted. Thank you. Thank you, Judge Prost.